UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

IN RE:
PATRICK HANNON AND
ELIZABETH HANNON,                                      Chapter 7
         DEBTORS.                              Case No. 12-13862-WCH

---

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court is the "Motion for Disbursement of Proceeds of Exempt Property Currently Held by Chapter 7 Trustee" (the "Motion for Disbursement") filed by the United States of America, Internal Revenue Service (the "IRS") and the oppositions thereto filed by the Chapter 7 trustee, Joseph H. Baldiga (the "Trustee"), and the debtors, Patrick and Elizabeth Hannon (the "Debtors"). The IRS asserts that it is entitled to the proceeds of property sold by the Trustee in which the Debtors had claimed an exemption pursuant to 11 U.S.C. § 522(c)(2)(B). For the reasons set forth below, I will deny the Motion for Disbursement.

**II. BACKGROUND**

      The facts are largely undisputed. On December 15, 2011, the IRS filed a civil action against the Debtors in the United States District Court for the District of Maine, seeking a money judgment against the Debtors for their federal income tax liabilities for the years 1999, 2000, and 2001 and against Patrick Hannon for additional trust fund recovery penalties (the "Maine Litigation"). Prior to filing the lawsuit, the IRS filed Notices of Federal Tax Lien with regard to

the tax debts in the York County, Maine Registry of Deeds and with the Maine Secretary of State.

On May 3, 2012, the Debtors filed a voluntary Chapter 11 petition. The Debtors' filed an initial "Schedule C – Property Claimed as Exempt" on June 1, 2012, and filed two amendments to Schedule C on October 2, 2012 and October 24, 2012, respectively. The schedules filed in October 2012 each claimed a homestead exemption in the Debtors' real property located at 177 Thrush Road, Acton, Maine (the "Acton Property") in the amount of $43,250.00 pursuant to § 522(d)(1),[1] and an exemption in a sapphire and diamond bracelet in the amount of $2,900.00, pursuant to § 522(d)(4).

On July 20, 2012, the IRS filed a proof of claim asserting claims totaling $ 8,014,490.74 against the Debtors, $7,999,244.98 of which was secured. On January 2, 2013, the Debtors' case was converted to one under Chapter 7. On January 18, 2013, the Trustee filed an adversary proceeding against the IRS, seeking to avoid a portion of the IRS's lien pursuant to § 724(a) (the "Avoidance Action"). In the complaint, the Trustee alleged that $2,639,218.09 of the IRS lien was avoidable as securing tax penalties, and an additional $2,578,327.71 of the IRS lien was avoidable as securing interest, which the IRS's proof of claim failed to show was compensation for actual pecuniary loss. By agreement of the parties, however, all pre-trial deadlines in the Avoidance Action were suspended until the Trustee completed his liquidation and recovery of estate assets.

Throughout 2013, the Trustee liquidated much of the Debtors' real and personal property. On March 13, 2013, I granted the Trustee's motion to sell 25 pieces of women's jewelry

---

[1] Unless expressly stated otherwise, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et. seq.*

belonging to Mrs. Hannon for $57,000.00. On April 17, 2013, I granted the Trustee's motion to sell six recreational vehicles belonging to the Debtors via public auction, including a 2007 Kawasaki Mule 3010 UTV (the "Mule"), which sold for $4,600.00.

On May 21, 2013, the Debtors filed a further amended Schedule C (the "Amended Schedule C"). On their Amended Schedule C, the Debtors claimed, among others, the following exemptions under Maine law:[2]

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| 177 Thrush Road, Acton Maine Residential Property improved by single family home | Me. Rev. Stat. Ann. tit. 14, § 4422(1)(A) | 95,000.00 | 400,000.00 |
| Household Furnishings | Me. Rev. Stat. Ann. Tit. 14, § 4422(15) | 15,000.00 | 15,000.00 |
| Platinum six-carat diamond ring | Me. Rev. Stat. Ann. tit. 14, § 4422(4) | Unknown | 60,000.00 |
| Emerald Earrings | Me. Rev. Stat. Ann. tit. 14, § 4422(4) | 1,500.00 | 5,000.00 |
| Wedding (Diamond) | Me. Rev. Stat. Ann. tit. 14, § 4422(4) | Unknown | Unknown |
| 2007 Kawasaki Mule 3010 UTV | Me. Rev. Stat. Ann. tit. 14, § 4422(8) | 1,000.000 | 1,000.00 |

On June 5, 2013, I granted the Trustee's motion to sell the Acton Property for $277,500.00. On August 5, 2013, the Trustee filed a motion to sell a vacation home owned by the Debtors located in Wells, Maine (the "Wells Property"). The motion to sell indicated that the Trustee and the buyer had agreed that the Trustee would not be obligated to remove any of the Debtor's personal property from the home. I granted the motion to sell the Wells Property on September 11, 2013.

---

[2] I list only the exemptions claimed in property which the Trustee liquidated. The Debtors retained possession of the other property in which they claimed exemptions.

3

The Debtors did not object to any of the Trustee's motions to sell the above property. Nevertheless, the Debtors allege that the Trustee sold the property in which they had claimed an exemption against their "informal protest."[3] According to the Debtors, they did not formally object to the sales, because the Trustee threatened to seize and sell even more of their exempt personal property if they continued to protest.[4]

On August 7, 2013, the Trustee filed a motion to approve a settlement agreement with the IRS concerning the Maine Litigation. I approved the settlement on October 2, 2013, over the Debtors' objection. The settlement agreement provided that "[t]he [IRS] shall have an allowed claim under 11 U.S.C. § 502 in the amount of $7,926,787.86 . . . secured by valid federal tax liens on all property and rights to property belonging to Debtors[.]"[5] The settlement agreement further provided that:

> The trustee shall continue to sell or otherwise liquidate the Estate's personal and real property in the ordinary course. The United States' rights, claims, and interests with respect to such sales shall be reserved and preserved subject only to the terms and conditions set forth in this settlement agreement. To the extent that the Internal Revenue Service ("IRS") (or the United States) possesses tax liens against any such Estate property, including any tax liens arising from assessments relating to tax years 1999, 2000, and 2001, then such individual tax liens . . . shall be treated, administered, preserved (for the benefit of the estate or the IRS (or the United States) as the case may be), and paid in accordance with the United States Bankruptcy Code (the "Code") (including 11 U.S.C. §§ 105, 503, 507, 551, 724, and 726) applicable non-bankruptcy law (including 26 U.S.C. § 6321), and the Maine Uniform Commercial Code.[6]

Pursuant to the settlement, the Maine District Court entered a final judgment on November 6, 2013, establishing the Debtors' liability for federal income taxes, penalties, interest, and fees in

---

[3] Debtors' Objection, Docket No. 731 at ¶ 9.

[4] *Id.* at ¶ 14.

[5] Docket No. 547-1 at ¶ 6.

[6] *Id.* at ¶ 8.

4

the amount of $7,844,189.96 for the years 1999, 2000, and 2001. The judgment further established that Patrick Hannon was liable for $82,589.17, for trust fund recovery penalty assessments.

On September 13, 2013, the Trustee filed a motion to approve a stipulation between the Trustee and the Debtors concerning the Debtors' claim of exemptions. Pursuant to the stipulation, the Trustee agreed to pay the Debtors $87,500[7] on behalf of their homestead exemption; $1,000 on behalf of the Mule; $3,500 on behalf of the jewelry; and $7,500[8] on behalf of the furnishings sold with the Wells Property. On September 23, 2013, however, the Trustee withdrew the motion to approve the stipulation.

On January 30, 2014, the Trustee filed an objection to the Debtors' exemptions. The Trustee asserted that the IRS lien precluded him from paying the sale proceeds of property claimed as exempt to the Debtors, and requested that I disallow the Debtors' claim of exemptions. In the alternative, the Trustee asked that I find that the Debtor was entitled to exemptions in the amounts set forth in the parties' previously filed stipulation. I conducted a hearing on the Trustee's objection on March 5, 2014, at which the Trustee, the Debtors, and the IRS all appeared. At hearing, I noted that neither the Trustee nor the IRS disputed that the Debtors had a right to claim an exemption in the property at issue. Rather, the parties disputed to whom the sale proceeds should be paid, an issue I found was not properly before me at that time. As such, I overruled the Trustee's objection.

---

[7] This represented the $95,000 exemption, less a $7,500 surcharge for the costs associated with evicting Elizabeth Hannon from the property.

[8] This represented the Debtors $15,000 exemption, minus $7,500 for appliances removed from the Acton Property and a Cadillac retained by the Debtors.

The IRS filed the Motion for Disbursement on March 13, 2014. Both the Debtors and the Trustee filed objections. I conducted a hearing on April 9, 2014, at which all the parties appeared. At the conclusion of the hearing, I took the matter under advisement. Post-hearing, the IRS and the Debtors each filed supplemental briefs.

## III. POSITIONS OF THE PARTIES

### A. The IRS

The IRS asserts that the proceeds of exempt property sold by the Trustee ought to be distributed to the IRS, as the Debtors' property was fully encumbered by the IRS's tax lien. The IRS points out that § 363(e) requires the court to provide adequate protection to an entity that has an interest in property sold by a trustee. The IRS contends that the only way to provide adequate protection of its interest in these circumstances is for the Trustee to distribute the sale proceeds to the IRS. The IRS also relies on § 725, which provides that a trustee "shall dispose of any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of [the Bankruptcy Code]" prior to the final distribution of property of the estate under § 726, as a basis for the relief requested. The IRS asserts that the Trustee has a duty under this section to satisfy its lien from the proceeds of the exempt property sold.

Next, the IRS contends that the proceeds of the Debtors' exempt property are not subject to the Trustee's avoidance powers under § 724(a). The IRS argues that § 724 only applies to property of the estate, and that the Debtors' claim of exemption removed the property from the bankruptcy estate. The IRS points out § 522(c) provides that both "a lien not avoided under § 724(a)" and "a tax lien, notice of which is properly filed" remain valid against exempt property. The IRS argues that the separate exception for tax liens under § 522 indicates that the entirety of

6

the lien remains on exempt property. The IRS asserts that allowing avoidance of liens securing tax penalties only against nonexempt property is most consistent with the general rule that exempt property is not liable for unsecured debts.

Finally, in response the Debtors' assertion that I have no jurisdiction over the proceeds of property claimed as exempt, the IRS contends that it may seek to enforce its lien in the Debtor's property in the bankruptcy court, as it is a right arising under the Bankruptcy Code, specifically § 522(c)(2)(B).

### B. The Trustee

The Trustee agrees that the proceeds from the sale of property claimed as exempt ought to be distributed to the IRS, not the Debtors. The Trustee, however, asserts that he may first exercise his avoidance powers under § 724(a) against the proceeds, because they remained property of the estate. The Trustee contends that, pursuant to § 522(c)(2)(B), the IRS's tax lien takes precedence over the Debtors' claimed exemptions. The Trustee argues that because the Debtors had no equity in the property sold, the Debtors' claimed exemptions fail to attach to any of the sale proceeds. Accordingly, the Trustee contends that any disbursement to the IRS must wait until the conclusion of the Avoidance Action. Finally, the Trustee points out that the cases on which the IRS relies dealt with attempts by debtors, not trustees, to avoid the penalty portion of tax liens on property claimed as exempt.

Second, the Trustee requests that if I determine that the proceeds should be distributed to either the IRS of the Debtors on behalf of the Debtors' exemptions, I find that the following amounts are appropriate: $3,500.00 for the Debtors' jewelry, $1,000.00 for the Mule, and $95,000.00 for the Acton Property. The Trustee asserts that the Debtors' exemption in

7

household furnishings was satisfied by the Debtors' retention of household furnishings from the Acton Property and a vacation home owned by Patrick Hannon located in Truro, Massachusetts.

    C. <u>The Debtors</u>

The Debtors assert that I have no jurisdiction over the proceeds of the property at issue, as they have been removed from the bankruptcy estate. The Debtors argue that once I overruled the Trustee's objection to their claim of exemption, the proceeds were no longer subject to administration by the Trustee and must now be turned over directly to the Debtors. The Debtors contend that § 522 merely preserves the IRS's lien in the proceeds, it does not authorize the Trustee to turn the proceeds over to the IRS. The Debtors claim that the IRS must instead enforce its lien outside of the bankruptcy proceedings.

The Debtors assert that they wish to deal with the IRS in the ordinary course, outside of the bankruptcy court. The Debtors contend that under the typical IRS collection procedures, the IRS takes into account undue hardship to the Debtors and generally does not enforce liens against exempt property. The Debtors point out that the IRS took no action to enforce its lien for six months after the Debtors claimed their exemptions, and only intervened when the Trustee alerted the IRS to the § 522(c)(2)(B) issue. The Debtors assert that it is not the IRS's usual practice to object to a debtor's exemptions or enforce a lien against exempt property.

The Debtors also assert that the Trustee acted improperly by selling the property in which they had claimed an exemption. The Debtors claim that they informally protested against the Trustee's sale of the property, and, in response, that the Trustee threatened to object to the Debtor's claim of exemptions in other assets and seize and sell even more of their property. The Debtors assert that they did not formally object to the sales, because the Trustee promised that they would receive money due to their claim of exemptions. The Debtors contend that their

silence should not be construed as assent to the sales, and that, given the Trustee's improper sale of the property, it would be inequitable to distribute the proceeds to any party other than the Debtors. Finally, the Debtors assert that the Trustee cannot now contend that they are not entitled to any exemption in the household furnishings, and should be bound by the parties' prior agreement that $7,500.00 was the appropriate amount payable from the sale of their furniture.

## IV. <u>DISCUSSION</u>

Commencement of a case under the Bankruptcy Code creates an estate comprised of all property of the debtor wherever located and by whomever held.[9] The estate includes all legal or equitable interests of the debtor in property.[10] Section 522(b)(1) of the Bankruptcy Code permits an individual debtor to exempt certain property from the bankruptcy estate, based on either the list of federal exemptions in § 522(d) or exemptions provided under state law.[11] "An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."[12]

Critically, however, a debtor may only exempt property from property of the estate to the extent that the debtor has an interest in the property.[13] A claim of exemption, by itself, does not affect the validity of liens on the property claimed as exempt.[14] Thus, a lien on property limits a debtor's ability to exempt the property from the bankruptcy estate.[15] Courts have consistently

---

[9] 11 U.S.C. § 541(a).

[10] 11 U.S.C. § 541(a)(1).

[11] 11 U.S.C. § 522(b)(1).

[12] *Owen v. Owen*, 500 U.S. 305, 308 (1991).

[13] *Id.*

[14] *Nelson v. Scala*, 192 F.3d 32, 33 (1st Cir. 1999).

[15] *Owen v. Owen*, 500 U.S. at 308-09.

held that a debtor is entitled to an exemption only to the extent the debtor has equity in the property claimed as exempt.[16]

In the case of fully encumbered property, this does not mean that the debtor has no right to an exemption. As the Supreme Court explained in *Owen v. Owen*, the debtor still holds legal title to a fully encumbered asset, and may exempt that interest from property of the estate.[17] While some courts have disallowed exemptions on the basis of the debtor's lack of equity in the property,[18] the better approach is to allow debtors to preserve their rights and claim an exemption. The exemption has no *value*, however, when the debtor possesses no equity in the asset.[19]

Accordingly, a debtor's claim of exemption in an asset that is either partially or fully encumbered does not remove the asset itself from the estate.[20] This is consistent with the Supreme Court's approach to exemptions in *Schwab v. Reilly*, where it stated that, "where a

---

[16] *See, e.g.*, *Law v. Siegel*, 134 S.Ct. 1188, 1192 (2014) ("Section 522(d) of the Code provides a number of exemptions unless they are specifically prohibited by state law. § 522(b)(2), (d). One, commonly known as the "homestead exemption," protects up to $22,975 *in equity* in the debtor's residence.") (emphasis added); *Drummond v. Urban (In re Urban)*, 375 B.R. 882, 885 n.7 (B.A.P. 9th Cir.2007) ("the amount of exemption available to a debtor is the lesser of either the equity in the property or the maximum amount of the applicable exemption."); *In re Neal*, 424 B.R. 235, 236 (Bankr. E.D. Mich. 2010) ("The debtors are only entitled to an exemption to the extent there is equity in the property."); *First of America Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236, 240 (Bankr. E.D. Mich. 1991) ("a debtor's maximum allowable exemption under § 522(d) is his equity in the property or the applicable statutory ceiling, whichever is less"); *see also* 4 Collier on Bankruptcy ¶ 522.09 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("As with all exemptions, the dollar amount [of the exemption] is applied only to the value of the debtor's interest in the property—in other words, the debtor's equity in the property.").

[17] *Owen v. Owen*, 500 U.S. at 308-09.

[18] *See, e.g., Baldridge v. Ellmann (In re Baldridge)*, No. 12-14612, 2013 WL 1759365 (E.D. Mich. Apr. 24, 2013), *affirmed* 553 F. App'x 598 (6th Cir. 2014) ("Exemptions are subordinate to a secured creditor's lien on real property. Consequently, if the amount of the secured debt exceeds the fair market value of the property such that there is no equity, the exemption is lost.") (internal citations omitted).

[19] *See In re Wade*, 466 B.R. 20, 23 (Bankr. D.D.C. 2012) ("liens are superior to any right of exemption, and the only realizable *value* that is property of the estate and that may be exempted is the debtor's equity in the property").

[20] *See Reeves v. Callaway*, 546 F. App'x 235, 241 (4th Cir. 2013) ("Debtors' Residence remained property of the bankruptcy estate despite the bankruptcy court allowing Debtors to reserve an exemption . . . ."); *In re Gaylor*, 123 B.R. at 239 ("[P]roperty cannot be exempted from the estate to the extent it is encumbered by a security interest.").

debtor intends to exempt nothing more than an interest worth a specified dollar amount in an asset that is not subject to an unlimited or in-kind exemption . . . title to the asset will remain with the estate."[21] In that case, the court addressed a statute which allowed the debtor to exempt the debtor's "interest" in certain property, up to a specified dollar amount.[22] The court found that when the amount of the debtor's claimed exemption was less than the value of the asset, the asset remained property of the estate.[23] Similarly, in the case of an encumbered asset, the lien limits the amount of the debtor's exemption to the amount of the debtor's equity in the property. As such, the debtor cannot exempt the asset in its entirety from the estate, and title to the asset remains with the estate.[24] The asset is subject to administration by the Chapter 7 trustee, while the debtor retains the right to receive the value of his exemption, if any, from a sale of the property.[25]

Typically, if the amount of liens and the debtor's exemption in an asset exceed the value of the asset, the trustee will abandon it, as it provides no value to the estate.[26] Nevertheless, the Bankruptcy Code vests a Chapter 7 trustee with the powers to avoid certain liens and other transfers of property, and thereby create value for the estate. As is relevant here, § 724(a), through cross-reference to § 726(a)(4), provides that a trustee may avoid a lien which secures a claim for "any fine, penalty, or forfeiture" to the extent that it is "not compensation for actual

---

[21] *Schwab v. Reilly*, 560 U.S. 770, 792 (2010).

[22] *Id.* at 782.

[23] *Id.*

[24] *See Reeves v. Callaway*, 546 F. App'x at 241.

[25] *See Schwab v. Reilly*, 560 U.S. at 792.

[26] *DeGiacomo v. Traverse (In re Traverse)*, No. 13-9002, 2014 WL 2142521 at *2-*3 (1st Cir. May 23, 2014).

11

pecuniary loss suffered by the holder of such claim."[27]  Moreover, pursuant to § 551, "any transfer avoided under section . . . 724(a) of this title . . . is preserved for the benefit of the estate."[28]  When a trustee avoids a lien, the trustee steps into the shoes of the creditor whose lien was avoided.[29]  Thus, the value of the lien is generally preserved for the estate, bypassing both the claims junior lienholders and the debtor's claim of exemption, if any.[30]

In some cases, however, the Bankruptcy Code allows a debtor to claim in exemption in property that has been recovered by the trustee.  Section 522(g) provides:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>     (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>     (B) the debtor did not conceal such property; or
>     (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.[31]

Thus, once a trustee has avoided a lien that was not voluntarily created by the debtor, the debtor may then claim the value of the lien as exempt, as long as the debtor did not conceal the property.  The debtor's ability to capture the value of the lien as exempt, however, arises *after* the lien has been avoided.[32]  Thus, in the case of an involuntary or judicial lien, the debtor may

---

[27] 11 U.S.C. §§ 724(a) and 726(a)(4).

[28] 11 U.S.C. § 551.

[29] *In re Traverse*, 2014 WL 2142521 at *3.

[30] *Id.*

[31] 11 U.S.C. § 522(g).

[32] *See Botkin v. DuPont Cmty. Credit Union*, 650 F.3d 396, 400 (4th Cir. 2011) ("when the existence of a lien is preventing the property from being exempt . . . [o]nly if the lien is in fact avoided does the debtor become entitled to claim the exemption.").

ultimately claim the value of the lien as exempt through § 522(g), but only once the lien has been avoided.

The removal the debtor's interest from the estate, however, does not end the inquiry. Generally, property exempted from the bankruptcy estate is not liable, either during or after the bankruptcy case, for debts that arose prepetition.[33] Nevertheless, § 522(c)(2) provides that exempt property remains liable for:

> (2) a debt secured by a lien that is--
>    (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>       (ii) not void under section 506(d) of this title; or
> (B) a tax lien, notice of which is properly filed[.][34]

Thus, a properly filed tax lien remains attached to property that is exempted from the bankruptcy estate. Moreover, § 522(c)(2)(B) prevents the avoidance of the penalty portion of a tax lien on exempt property. While § 522(c)(2)(A) indicates that a lien avoided under § 724(a) does not remain attached to exempt property, § 522(c)(2)(B) does not contain the same "not avoided under . . . [§] 724(a)" language that § 522(c)(2)(A) does. It simply refers to "a tax lien," without distinguishing between different portions of such a lien. Thus, courts have found that a debtor cannot use § 724(a) to avoid the penalty portion of tax liens on exempt property.[35] Rather, exempt property remains liable for a tax lien in its entirety.

I now turn to applying the statutory framework to the case at hand. In this case, there is no dispute that all of the Debtors' property is fully encumbered by the IRS lien, leaving the Debtors with no equity in the property at issue. While the Debtors are entitled to claim an

---

[33] 11 U.S.C. § 522(c).

[34] 11 U.S.C. § 522(c)(2).

[35] *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1251-53 (9th Cir. 1995); *Gerulis v. United States (In re Gerulis)*, 56 B.R. 283, 288 (Bankr. D. Minn. 1985).

exemption in the property, and thereby reserve their rights against other creditors, the value of their exemption is zero. Contrary to the IRS's and the Debtors' assertions, the assets in which the Debtors claimed exemptions remained property of the estate, because the Debtors did not have a full interest in the property such that they could exempt it entirely from the estate. Thus, the property remained subject to administration by the Trustee.

When the Trustee sold the property at issue, the Trustee was required to first satisfy the claims of secured creditors from the proceeds.[36] Because the property was fully encumbered, the Debtors' exemption did not attach to any of the proceeds from the sale. Thus, at this stage of the case, there are no "exempt proceeds" for the Trustee to turn over to either the IRS or the Debtors.

The IRS's arguments are, in essence, premature. The IRS is correct that, even if the Trustee is successful in the Avoidance Action, the entirety of its tax lien will survive as to the property claimed as exempt. Pursuant to § 522(g), if the Trustee avoids the IRS lien on property in which the Debtors have claimed an exemption, the value of the avoided lien will accrue first to the Debtors exemptions, not the estate.[37] Thus, once the Avoidance Action is completed, there may be sale proceeds which are exempted from the bankruptcy estate. Then, pursuant to § 522(c)(2)(B), any exempt portion of the sale proceeds would be liable for the entirety of the IRS lien, not solely the non-penalty portion. Nevertheless, only if the Trustee succeeds in the Avoidance Action will any of the sale proceeds become exempt property. Accordingly, the IRS is not currently entitled to any distribution from the Trustee.

---

[36] If the Debtors wished to deal with the IRS outside of their bankruptcy case, as they insist, the Debtors could have objected to the sale and moved for the Trustee to abandon the property. They failed to do so.

[37] I note that it appears highly unlikely that, with respect to the property in which the Debtors claimed an exemption, the Trustee will recover any equity for the bankruptcy estate. Because § 522(g) brings back the Debtors' exemptions, the amount of the lien avoided would have to exceed the amount of the Debtors' exemptions before any value would accrue to the estate.

**V. CONCLUSION**

In light of the foregoing, I will enter an order denying the Motion for Disbursement.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 9, 2014

Counsel Appearing:

    Kathryn Keneally, Edward J. Murphy, U.S. Department of Justice, Washington, D.C.
        for the IRS
    Kate P. Foley, Mirick, O'Connell, DeMallie, & Lougee, LLP, Westborough, MA
        for the Trustee
    Herbert Weinberg, Rosenberg & Weinberg, North Andover, MA
        for the Debtors