**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>PARTICK HANNON AND ELIZABETH HANNON,<br><br>            Debtors | Chapter 7<br>Case No. 12-13862-MSH |

**MEMORANDUM OF DECISION ON TRUSTEE'S FINAL REPORT AND FINAL APPLICATIONS FOR FEES AND EXPENSES OF TRUSTEE AND COUNSEL**

Having reviewed and considered the Trustee's Final Report filed in this case [ECF #900], and the final application for allowance of compensation based on statutory commissions filed by the chapter 7 trustee, Joseph H. Baldiga, [ECF #901] seeking statutory commissions of $130,584.63, and the final application for allowance of compensation and reimbursement of expenses of the trustee's general counsel, Mirick, O'Connell, DeMallie & Lougee, LLP ("MODL") [ECF #902] seeking fees of $1,048,464 and expenses of $57,496.59, and having reviewed and considered the objections filed by the Internal Revenue Service ("IRS") to the TFR and the trustee's and MODL's fee applications, and after a hearing, I hereby set forth my findings and rulings with respect to these matters.

I.

Upon conversion of this case from chapter 11 to chapter 7 in January of 2013, the trustee was confronted with an estate comprised of diverse real estate assets located in multiple states, other assets, including the debtors' investments in or rights to receive income or royalties from hard-to-value interests, and potential avoidance actions of uncertain values. The estate's assets (apart from avoidance action recoveries) were valued by the debtors in their schedule of assets as having a value of $5.7 million. At the same time, the claim of the debtors' largest creditor, the

IRS, was the subject of active litigation in the United States District Court for the District of Maine.

The IRS's claim was eventually fixed at $7.8 million upon the entry of a final judgment by the Maine district court in November of 2013. The judgment was the result of an agreement between the trustee and the IRS dated July 2, 2013. Paragraph 8 of the agreement provides: "The Trustee shall continue to sell or otherwise liquidate the Estate's personal and real property in the ordinary course."

In an adversary proceeding (#13-01022) brought by the trustee against the IRS in this court (the "IRS Lien Avoidance Action") the trustee sought to invoke his lien avoidance powers under Bankruptcy Code § 724(a)[1] to avoid $1.4 million worth of the IRS's tax lien claim and preserve that lien amount for the benefit of the estate. In December of 2013, the IRS assented to a motion filed by the trustee in the IRS Lien Avoidance Action to suspend all deadlines in the proceeding until the trustee completed his liquidation of the estate's assets. The assented-to motion states: "[T]he parties have recently conferred regarding the within Adversary Proceeding and have agreed that it will be most cost-effective to allow the trustee to complete his liquidation of all Estate assets before expending additional resources in this matter."

For all intents and purposes, the trustee completed his liquidation of the assets of the estate at the end of 2015. There was a fund of approximately $300,000 being held in an interpleader action pending in the United States district court in this district that was not released to the trustee until January of 2019, but the trustee was aware of the fund at the end of 2015 and thus could factor it into his consideration of how to proceed with the case at the end of 2015.

---

[1] All references to the Bankruptcy Code or the Code are to 11 U.S.C. § 101 *et seq*.

By the end of 2015, the trustee's liquidation process had resulted in an estate of approximately $3.2 million in cash. Add to this the approximately $300,000 interpleader fund that the trustee expected to (and eventually did) recover and the total estate amounted to approximately $3.5 million. On the other side of the ledger was the judicially determined claim of the IRS of approximately $7.8 million of which approximately $2.5 million represented penalties and interest on penalties. The IRS's claim was secured by a first priority tax lien encumbering approximately $2.9 million of the estate's cash. Other creditors held liens ahead of the IRS on $535,000 of the cash and $85,000 of the cash was unencumbered.

II.

The IRS has objected to approval of the TFR insofar as it reflects the trustee's intention to pay trustee's commissions of $130,584.63 and MODL's fees of $1,048,464 and expenses of $57,496.59. It also objected to the fee applications themselves. The IRS maintains that the trustee should have known from day one of his involvement in this case and every day thereafter that, based on the estimated value of the estate's assets and the magnitude of the IRS's tax lien claim, his administration of the estate could not possibly generate a dividend to general unsecured creditors and thus the trustee should have abandoned the assets so that the IRS could enforce its lien rights and liquidate the assets itself.

III.

The award of compensation to a trustee and his professionals is authorized by Bankruptcy Code § 330. The relevant provisions of § 330 for purposes of evaluating the fee applications and the IRS's objections in this case are subsections (a)(3) and (4) which provide:

> "(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider

3

the nature, the extent, and the value of such services, taking into account all relevant factors, including— (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4) (A) Except as provided in subparagraph (B), the court shall not allow compensation for— (i) unnecessary duplication of services; or (ii) services that were not— (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."

11 U.S.C. § 330 (a)(3) and (4).

IV.

I reject the IRS's argument as it relates to the trustee's conduct at the inception of his appointment. Applying the criteria set forth in Code § 330 I find that at the time of the trustee's appointment as chapter 7 trustee, based on the complicated and multifarious nature of the assets of the estate, their values as scheduled by the debtors, and the unsettled amount of the IRS's claim being litigated in the federal court in Maine, the trustee's decision to administer the estate's assets in an effort to generate a dividend to unsecured creditors, rather than abandoning those assets, was a reasonable one. I find support for this conclusion in Judge Hillman's February 6, 2013 order in this case clarifying the scope of the IRS's previously obtained order awarding it relief from the automatic stay. Judge Hillman reconsidered his prior order and circumscribed the extent of the IRS's relief by directing that the trustee, and not the IRS, undertake the liquidation of all assets of the debtors' estate, including real property in Maine that was subject to the IRS's tax lien.

I also take issue with the IRS's position that it was unreasonable for the trustee to continue with the liquidation process once the IRS's claim had been fixed at $7.8 million by the Maine district court in November 2013. By that time the trustee had developed a litigation strategy to attempt to avoid a portion of the lien securing the IRS's claim and to preserve the avoided lien for the benefit of other creditors of the estate. While the IRS has vociferously disputed the trustee's legal rationale as to the avoidability of the IRS's lien, the trustee's rationale was reflected in a non-frivolous, well-articulated complaint filed by the trustee in this court. Furthermore, the IRS has conceded that the trustee was the best party to complete the liquidation of the estate's assets twice during the pendency of this case. First, in the July 2013 agreement for judgment in the Maine district court action and again in the December 2013 assented-to motion to suspend proceedings in this court (see above). The IRS's conduct in both these circumstances suggests that it may be estopped from now claiming the trustee's decision to liquidate the estate's assets was unreasonable.

Even apart from the IRS's prior conduct, it makes sense that the trustee was the best person to conduct the liquidation here. A trustee has access to specialized bankruptcy tools available only to him, including the ability to sell assets free and clear of liens through a well-established and universally accepted process aimed at maximizing the selling price. He also has the ability to efficiently and expeditiously recover property for the estate through avoidance and turnover proceedings.

Applying the criteria set forth in Bankruptcy Code § 330, I find that the trustee's and MODL's conduct from appointment until completion of the liquidation process at the end of 2015 was reasonable and compensable in the amounts requested.

The IRS's final argument is that by the end of 2015, when the liquidation process had been completed and the trustee knew how much money he was going to collect, the trustee should have realized he would not be able to pay any creditors other than the IRS, and at that point he should have abandoned his claim to the $300,000 interpleader fund and closed the case. Instead, the trustee expended time and incurred professional fees from 2016 through 2019 by continuing to administer the estate, primarily in litigating the interpleader action and the IRS Lien Avoidance Action.

I agree with the IRS on this point. By the beginning of 2016, it should have been apparent to the trustee that, barring a voluntary carveout by the IRS of a portion of its dividend to be allocated to other creditors, the IRS would be the sole beneficiary of the cash in the estate after payment of the expenses of administration in the chapter 7 case pursuant to Code § 724(b)(2). The trustee should have realized that any benefit he could obtain in the IRS Lien Avoidance Action could not be enjoyed by creditors because, by the end of 2015, the estate had incurred chapter 7 administrative expenses equal to or greater than the amount of the potentially avoidable IRS lien.

Assuming the trustee had pulled the plug on this case in early 2016 as the IRS suggests, the estate would have saved about $87,000 in attorneys' fees to MODL.[2] The trustee's statutory commission would have been reduced by $9,000 representing 3% of the $300,000 in interpleader funds he wouldn't have collected. Taking into account that the closing of the case would have

---

[2] MODL's first and second interim fee awards covered the periods from January 2, 2013 through December 30, 2014, all prior to completion of the trustee's liquidation. Its third and final fee application, presently before me, seeks additional fees for the period from January 1, 2015 through August 15, 2019. Fees requested for work performed in 2015 total $136,821 and for work performed from 2016 through 2019 total $86,707.

6

involved additional effort by the trustee and MODL resulting in additional fees to MODL, I find that the net savings to the estate in legal fees had this case been closed in 2016 would have been $77,000. The trustee's commission reduction of $9,000 would have been unaffected.

V.

In light of the foregoing considerations, I will approve as final MODL's first and second interim fee awards previously paid and award MODL additional fees of $146,528 (a reduction of $77,000 from the amount requested) plus expenses of $21,788.48. I will also approve the trustee's application for compensation in the amount of $121,584.63 (a reduction of $9,000 from the amount requested).

Separate orders consistent with this memorandum shall enter.

At Boston, Massachusetts this 26th day of December, 2019.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge